IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIBERIUS MAYS, # N-92625,

        Plaintiff,

vs.                      Case No. 18-cv-597-DRH

VIPEN SHAH,
DR. RITZ,
PHILIP MARTIN,
RYAN ERICKSON,
MICKEY WALTON,
APRIL WAMPLER,
DAVID RAINS,
MICHELLE NEESE,
ANN LEHR,
MELISSA PHOENIX,
LESLIE McCARTY,
and TERRI ANDERSON,

        Defendants.

# MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff is currently incarcerated at Robinson Correctional Center ("Robinson"). He originally brought this civil rights action on February 6, 2018, when it was filed as *Mays v. Santos, et al.*, Case No. 18-181-MJR-SCW. After screening the Complaint, the Court severed a number of Plaintiff's claims from the original case into separate actions. (Doc. 1). The instant case contains Counts 8, 9, and 10, which arose at Robinson and were described as follows:

> **Count 8:** Eighth Amendment deliberate indifference claim against Shah, Ritz, and Martin for denying and delaying treatment for

1

Plaintiff's nasal condition at Robinson during 2017;

**Count 9:** Eighth Amendment deliberate indifference claim against Martin, Erickson, Walton, Wampler, Rains, Neese, Lehr, Phoenix, McCarty, and Anderson for failing to intervene to ensure that Plaintiff would be given adequate medical treatment at Robinson;

**Count 10:** First Amendment retaliation claim against Shah, for prematurely terminating Plaintiff's post-surgery medication and nasal rinses in January 2018 because Plaintiff filed grievances against Shah.

(Doc. 1, pp. 10-11).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557.

Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

**The Complaint**

The portions of the Complaint which relate to Counts 8, 9, and 10 are summarized as follows.

Plaintiff had undergone surgery in April 2014 for nasal polyps, while he was incarcerated at Lawrence Correctional Center. (Doc. 2, p. 6). He subsequently had 2 follow-up visits for "nasal cleansing" to the outside hospital where he had the surgery, but in February 2015, he was not allowed to return to the hospital for another 6-month follow-up. According to Plaintiff, he continues to

suffer from chronic nasal polyps which impair his ability to breathe, interfere with his sense of smell, cause pain and dizziness when he blows his nose, and cause nosebleeds. He also gets a sore throat and sometimes chokes from breathing through his mouth. (Doc. 2, p. 9). He suffers from asthma and severe lower back pain as well. Plaintiff was confined at Centralia Correctional Center before being transferred to Robinson, and while there, he unsuccessfully sought a referral to an outside specialist to address his nasal condition. (Doc. 2, pp. 9, 15).

On February 8, 2017, Plaintiff was transferred to Robinson. (Doc. 2, p. 14). The conditions in his housing area there were not clean, and the dry air irritated his throat. *Id.* On February 14, 2017, Plaintiff consulted Health Care Administrator Martin about obtaining prednisone (which had been prescribed for Plaintiff in the past) to treat his nasal polyps. Martin was arrogant and condescending, and would not allow Plaintiff to speak. (Doc. 2, p. 16). Plaintiff wrote to the warden and filed a grievance over being denied distilled water for his nasal rinse kit in early February.

In February and March 2017, Plaintiff consulted Dr. Shah and requested "collegial review" for a referral to an outside specialist for evaluation of his nasal polyps. Shah and Dr. Ritz denied the referral on March 13, 2017, while Plaintiff's condition continued to deteriorate. (Doc. 2, p. 16; Doc. 2-2, pp. 22-23). Shah did order prednisone and a nasal rinse kit for 3 months, but he later reduced Plaintiff's dosage of prednisone. (Doc. 2, pp. 16-17).

Plaintiff filed grievances over Shah's treatment, claiming his nasal polyps

were getting progressively worse. Martin, Erickson (Clinical Service Supervisor), Walton (Counselor), Wampler (Casework Supervisor), and Warden Rains denied his grievances and "failed to exercise their authority to intervene" to correct Shah's improper treatment. (Doc. 2, pp. 17, 19, 22; Doc. 2-2, pp. 30). Administrative Review Board members Lehr, Phoenix, McCarty, and Anderson denied Plaintiff's numerous grievances over medical treatment. (Doc. 2, pp. 19, 22; Doc. 2-2, pp. 31-33, 36-37, 40).

In June 2017, Shah requested collegial review for an outside consultation for Plaintiff's nasal polyps, but Ritz (for Wexford Health Sources) denied the request. (Doc. 2, p. 17; Doc. 2-2, pp. 26-27).

On August 11, 2017, Plaintiff wrote a letter to Rains and Neese (Warden for Programs, over the Health Care Unit) detailing his inadequate medical care and his worsening symptoms of pain, dizziness, and obstructed breathing. This letter was also mailed to Dr. Steve Meeks, the IDOC Chief Medical Director (Meeks is not a Defendant). (Doc. 2, p. 17; Doc. 2-2, p. 34). Meeks overruled Ritz's "third denial" of the outside consultation, and Plaintiff had a CAT scan with an ear, nose, and throat specialist on August 29, 2017. (Doc. 2, pp. 17-18; Doc. 2-2, p. 26). Plaintiff also includes a consultation report dated September 8, 2017, from an outside doctor. (Doc. 2-2, p. 35).

On January 5, 2018, Plaintiff had endoscopic nasal surgery for the polyps at Carle Hospital. (Doc. 2, p. 17). On January 8, 2018, Plaintiff was in the infirmary when Dr. Shah asked him why he was there and what happened.

Plaintiff responded by asking Shah why he was asking crazy questions. Shah asked Plaintiff to leave. Plaintiff complained to Neese and Martin about Shah, and wrote a grievance on him that day.

The next day, January 9, 2018, Shah terminated Plaintiff's Tylenol-3 and reduced the frequency of his nasal rinses to 3 per day. Plaintiff claims these actions were premature and improper, and were taken in retaliation for Plaintiff's grievances against Shah. (Doc. 2, pp. 18, 20).

Plaintiff asserts that Wexford Health Sources (which is not included among the Defendants) maintains policies and customs that incentivize its employees to provide inadequate treatment in order to cut costs. (Doc. 2, pp. 18-19, 23).

Plaintiff seeks monetary damages for the violations of his rights. (Doc. 2, p. 23).

## Merits Review Pursuant to 28 U.S.C. § 1915A

For clarity, the Court shall continue to refer to the claims in this action as they were numbered in the original case.

> **Count 8:** Eighth Amendment deliberate indifference claim against Shah, Ritz, and Martin for denying and delaying treatment for Plaintiff's nasal condition at Robinson during 2017;

> **Count 9:** Eighth Amendment deliberate indifference claim against Martin, Erickson, Walton, Wampler, Rains, Neese, Lehr, Phoenix, McCarty, and Anderson for failing to intervene to ensure that Plaintiff would be given adequate medical treatment at Robinson;

> **Count 10:** First Amendment retaliation claim against Shah, for prematurely terminating Plaintiff's post-surgery medication and nasal rinses in January 2018 because Plaintiff filed grievances against Shah.

Count 8 shall receive further review against 2 of the Defendants.  Count 9 shall be dismissed from the action without prejudice.  Count 10 shall proceed against Shah.

**Count 8 – Deliberate Indifference to Serious Medical Condition – Shah, Ritz, and Martin**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).  However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm."  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Further, a defendant's inadvertent error, negligence or even ordinary malpractice

is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff had suffered from recurring nasal polyps, sinus congestion, pain, and occasional bleeding from his nose for a period of several years, including the year that he spent at Robinson, beginning in February 2017. The polyps required surgical intervention in 2014, and a second surgery was performed in January 2018. This condition satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm from this condition.

Plaintiff describes one encounter with Dr. Martin, on February 14, 2017, when Plaintiff sought treatment with prednisone. (Doc. 2, p. 16). Plaintiff does not state that Martin denied his medication request, and his subsequent allegations show that he did obtain prednisone from Dr. Shah. Plaintiff's chief complaint about Martin is that he would not allow Plaintiff to speak, and was arrogant and condescending in his manner. As irritating as such behavior may be, it does not violate any constitutional rights, and will not support a claim for deliberate indifference to a serious medical need. The deliberate indifference claim against Dr. Martin in Count 8, therefore, shall be dismissed without prejudice.

Dr. Shah provided Plaintiff with prednisone and nasal rinses for relief of Plaintiff's ongoing symptoms, however, he refused to refer Plaintiff to an outside

specialist for a consultation in March 2017. According to Plaintiff, he had been suffering from impaired breathing, pain, and nosebleeds for over a year before he came to Robinson, and his condition had been growing worse over time. In June 2017, Shah responded favorably to Plaintiff's request for a referral, and submitted the referral to collegial review. However, Dr. Ritz denied that referral.

Delaying a specialist referral or treatment, while an inmate continues to suffer serious symptoms, may support a claim for deliberate indifference to medical needs. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (lengthy course of ineffective treatment, and refusal to order testing or specialist referral over a two-year period during which plaintiff suffered from ulcer suggested deliberate indifference). The delay in seeking a specialist referral from March 2017 until June 2017 may be attributed to Dr. Shah. At this early stage of the case, Plaintiff may proceed with his deliberate indifference claim against Shah in Count 8 for the initial refusal to make a referral for specialist care of the nasal polyps.

Shah's June 2017 referral request was denied by Dr. Ritz, who is an official for Wexford Health Sources. That denial was eventually overruled by Dr. Meeks, the Chief Medical Director for the IDOC, after Plaintiff challenged the denial. When Ritz turned down the referral request, Plaintiff experienced a further delay until August 29, 2017, before he was able to obtain testing and a consultation with the ear, nose, and throat specialist. Plaintiff's surgery was not scheduled until January 2018. Plaintiff's history of symptoms was reported to Ritz when the

referral request was made. Ritz's refusal to permit Plaintiff to see a specialist could amount to a knowing disregard of a serious risk to Plaintiff's health, therefore, Plaintiff may also proceed with his deliberate indifference claim in Count 8 against Ritz.

To summarize, **Count 8** shall proceed only against Shah and Ritz. Martin shall be dismissed from this count without prejudice.

### Count 9 – Deliberate Indifference – Failure to Intervene

Plaintiff's claims against Martin, Erickson, Walton, Wampler, Rains, Neese, Lehr, Phoenix, McCarty, and Anderson all arise from these individuals' handling of Plaintiff's grievances. The grievances were filed by Plaintiff to complain about what he considered improper or inadequate medical treatment by Dr. Shah.

Martin (Health Care Administrator) and Erickson (Clinical Service Supervisor) may have been in supervisory positions over Dr. Shah. Aside from the claim against Martin that shall be dismissed from Count 8, Plaintiff does not assert that Martin and Erickson were directly involved in providing him with medical care or making decisions about his treatment. From the factual allegations of the Complaint, it appears that these individuals merely reviewed Plaintiff's grievances, or possibly had some supervisory authority over Shah.

Ordinarily, an administrative official who reviews an inmate's grievances over the alleged misconduct of another person is not "personally responsible" for the complained-of conduct, and does not incur liability in a civil rights case for denying the grievance. The Seventh Circuit instructs that the alleged mishandling

of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Similarly, a supervisor cannot be held liable for misconduct on the part of a subordinate employee, merely by virtue of his or her supervisory authority. The doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

On the other hand, a defendant may have sufficient personal responsibility for another official's misconduct "'if the conduct causing the constitutional deprivation occurs at [the defendant's] direction or with his knowledge and consent.'" *Wilson v. Warren County, Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). *See also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences"). In the case of Martin and Erickson, the Complaint and exhibits do not demonstrate that the content of Plaintiff's grievances against Shah was sufficient to place these Defendants on notice that Shah's treatment rose to the level of an Eighth Amendment violation. Martin and Erickson shall therefore

be dismissed from Count 9.

The claims against Counselor Walton and Casework Supervisor Wampler shall be dismissed for the same reasons. These Defendants had nothing to do with providing medical treatment for Plaintiff, and cannot be faulted for "failing to intervene" in Shah's handling of Plaintiff's medical care, based on their limited role of reviewing Plaintiff's grievances.

Turning to Warden Rains and Neese (Warden for Programs), Plaintiff does not include any factual allegations as to the contents of his grievances against Dr. Shah before August 2017[1] that would support a finding that Rains or Neese turned a blind eye to Shah's allegedly inadequate medical care, such that Shah's conduct occurred at the direction of Rains or Neese or with their knowledge or consent. Notably, as discussed under Count 8 above, Plaintiff's claim against Shah himself for deliberate indifference is limited to the period before June 2017 – at which time Shah attempted to refer Plaintiff to an outside specialist. Accordingly, any claim against Rains or Neese based on Shah's alleged deliberate indifference would be limited to the period prior to June 2017 – and the Complaint provides no factual support for holding Rains or Neese liable for Shah's conduct during that period. The deliberate indifference claim against Rains and Neese shall therefore also be dismissed.

The remaining claims in Count 9 are against Administrative Review Board

---

[1] Plaintiff's August 11, 2017, letter to Rains and others arguably provided sufficient notice of Plaintiff's claims of inadequate care to trigger a duty on the part of the letter's recipients to look into the allegations and take action. (Doc. 2-2, p. 34). This appears to in fact be what happened, as Meeks overruled Ritz's denial of Plaintiff's specialist referral after receiving the letter. As a result, Plaintiff was eventually approved for surgery.

members Lehr, Phoenix, McCarty, and Anderson. These Defendants provided a final level of review of Plaintiff's grievances after they were denied by Robinson officials. As with Robinson Defendants Walton and Wampler, Lehr, Phoenix, McCarty, and Anderson were not personally involved in providing medical care to Plaintiff. Under the authority discussed above, these Defendants merely reviewed grievances, and therefore did not have any personal responsibility for the alleged misconduct of Shah, or any other individual whose conduct triggered Plaintiff's grievances. *See, e.g., Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim").

For the reasons stated above, the deliberate indifference claim in **Count 9** against Martin, Erickson, Walton, Wampler, Rains, Neese, Lehr, Phoenix, McCarty, and Anderson shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 10 – Retaliation – Shah

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). If an otherwise permissible action (such as changing a prisoner's medications) is taken in retaliation for the exercise of a constitutionally protected right, then it may violate § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009)

(discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner).

The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges*, 557 F.3d at 551. "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

In Plaintiff's case, he had filed a number of grievances complaining about the quality of Dr. Shah's medical care. On January 8, 2018, after Plaintiff returned from having surgery, he had words with Shah, and filed another grievance against him. (Doc. 2, p. 18). The next day after the filing of this grievance, Shah took away Plaintiff's pain medication (Tylenol-3), and cut back on his nasal rinses; actions which Plaintiff clearly views as adverse. Plaintiff alleges that these changes were premature so soon after his surgery, and claims that Shah acted in retaliation for the many grievances he had filed, including the most recent one. *Id.* This sequence of events suggests the possibility that Shah's medication/treatment changes were motivated by a desire to retaliate. On the

other hand, Shah's actions may have been medically reasonable and proper. Further factual development will be necessary in order to determine whether Plaintiff's retaliation claim may be sustained. Accordingly, **Count 10** shall proceed for further review.

## Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 5) shall be referred to the United States Magistrate Judge for further consideration.

Plaintiff has paid the filing fee for this action in full, and has requested the Court to order service of process at government expense (Docs. 4 & 6). These motions are **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below on those Defendants who remain in the action. No service shall be made on the dismissed Defendants.

## Disposition

**COUNT 9** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendants **MARTIN, ERICKSON, WALTON, WAMPLER, RAINS, NEESE, LEHR, PHOENIX, McCARTY,** and **ANDERSON** are **DISMISSED** from this action without prejudice.

**COUNT 8** shall proceed only against Shah and Ritz, and **COUNT 10** shall proceed against Shah. To that end, the Clerk of Court shall prepare for Defendants **SHAH** and **RITZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).

The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, a copy of the Memorandum and Order at Doc. 1, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 5).

Further, this entire matter shall be **REFERRED** to the United States

Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.05.24
16:06:27 -05'00'

**United States District Judge**

17