| | |
|---|---|
| TIBERIUS MAYS,<br>#N92625,<br><br>             Plaintiff,<br><br>v.<br><br>VIPIN SHAH,<br>STEPHEN RITZ,<br>PHILIP MARTIN,[1]<br>RYAN ERICKSON, and<br>WEXFORD HEALTH SOURCES, INC.,<br><br>             Defendants. | <br><br><br><br><br>Case No. 18-cv-00597-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Ryan Erickson and Philip Martin (Doc. 96) and a Motion to Transfer Venue (Doc. 127) and a Motion for Extension of Time to File a Response (Doc. 138) filed by *pro se* Plaintiff Tiberius Mays. For the following reasons, the Court grants the Motion for Summary Judgment and denies the Motion to Transfer and the Motion for Extension of Time.

## MOTION TO TRANSFER VENUE

Mays has filed a motion requesting that this case be transferred to the Northern District of Illinois. He states that he has been released from incarceration and now lives in the Chicago area. Mays argues that a change of venue would save the state money because his case will have to be handled by video since the trip to East St. Louis is a five to six hour drive. He also states that the attorney general and the attorneys for Wexford

---

[1] The Clerk of Court is directed to correct the docket to reflect Phillip Martin's proper name as identified in the motion for summary judgment: Philip Martin. (*See* Doc. 96).

Health Sources have offices in Chicago. (Doc. 127, p. 1).

Defendants filed a joint response in opposition to the motion. (Doc. 131). Defendants argue that venue is proper in the Southern District of Illinois because Mays's claims arise from his time spent at Robinson Correctional Center ("Robinson"), located within the Southern District of Illinois. They also assert that Mays has not provided any evidence that the case would be more costly for him to appear via video, and a majority of the witnesses relevant to this case reside within the Southern District of Illinois. Finally, they argue that transfer of venue would result in needless delay since the motions for summary judgment have already been fully briefed and they are only waiting for Mays to file a response. (*Id.* at p. 2).

A district court "may transfer any civil action to any other district or division where it might have brought…" 28 U.S.C. § 1404. The federal venue statute provides that a civil rights action may be brought in (1) the judicial district in which any defendant resides (if all defendants are residents of the State in which the district is located), or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b). When Mays commenced this action, he was incarcerated at Robinson, and all of the events or omissions giving rise to the claims in this case occurred at this facility, which is situated in the federal judicial district of the Southern District of Illinois. 28 U.S.C. § 93(c). Additionally, while Mays argues that defense counsel has offices in Chicago, it has not been asserted that any of the actual defendants resided or worked in the geographical boundaries of the Northern District of Illinois division at the time the case was filed. Because he could not have brought this action in the Northern District of Illinois at the time the action was commenced, Section

1404 does not provide that transfer is appropriate, and the motion is denied.

<h2 style="text-align:center">MOTION TO FOR EXTENSION OF TIME TO FILE A RESPONSE</h2>

Mays has filed a fifth motion asking for more time to respond to Defendants' motions for summary judgment. (Doc. 138). He states that he is unable to timely file a response because he has injured his finger and is unable to write or type. Due to this injury, he is also in need of counsel and is waiting on the Court to rule on his motion for the appointment of counsel before filing a response.

Defendants Erickson and Martin filed their motion for summary judgment on August 1, 2019 (Doc. 96), and Mays had thirty days from service to file a response. SDIL-LR 7.1 (c)(1). Mays did not file a response or a motion for an extension within that thirty days. The remaining defendants, Ritz, Shah, and Wexford Health Sources filed a motion for summary judgment on September 30, 2019. (Doc. 115). On October 11, 2019, Mays filed his first motion requesting an extension of time to file a response to Defendants' motions (Doc. 119), which the Court granted. (Doc. 120). The Court subsequently granted his second, third, and fourth requests for additional time to file a response. (Docs. 122, 130, 136). He was repeatedly informed by the Court that further extensions would unlikely be granted absent extraordinary circumstances. Finally, in granting his fourth motion for an extension of time, the Court advised him that no further extensions would be granted and that the Court would rule on the motions with or without a response from him. (Doc. 136). On March 2, 2020, Mays filed another motion seeking an extension.

The Court will not exercise its discretion to allow Mays anymore additional time to respond to the motions for summary judgment. Mays has been given more than sufficient time and was warned that no further extensions would be granted. The Court

further notes that while Mays has been unable to respond to the pending summary judgment motions, he has been able to file with this Court a motion to compel (Doc. 100), a motion to strike Defendants' motion for summary judgment (Doc. 101), a motion to answer numerous pending motions (Doc. 102), an objection to rulings by the magistrate judge (Doc. 107), a reply to Defendants' response to the motion to compel (Doc. 113), a motion to transfer venue (Doc. 127), and a motion for the appointment of counsel (Doc. 128). For these reasons, his motion is denied.

### MOTION FOR SUMMARY JUDGMENT

### *I.    Background*

Plaintiff Tiberius Mays commenced this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. On March 21, 2018, the Court issued an Order (Doc. 1) severing a number of Mays's original claims into separate actions, and the claims regarding medical treatment of his nasal polyps during his time at Robinson were severed into this action. Mays alleges that he suffers from chronic nasal polyps, which impair his ability to breathe, interfere with his sense of smell, cause pain and dizziness when he blows his nose, and cause nose bleeds. (Doc. 9, p. 4; Doc. 48, p. 11). He also gets a sore throat and sometimes chokes from breathing through his mouth. (*Id*.). In April 2014, while he was at Lawrence Correctional Center, Mays underwent nasal surgery at an outside hospital. (Doc. 9, p. 4). On February 8, 2017, he was transferred to Robinson, and he claims his condition continued to deteriorate due to inadequate medical care. (Doc. 48, p. 5). He had an appointment with an ear, nose, and throat doctor on September 8, 2017, and endoscopic nasal surgery for the polyps at Carle Hospital on January 5, 2018. (*Id.* at p. 7; Doc. 97-1, p. 11). Following the surgery, Dr. Shah terminated Mays's Tylenol-

3 and reduced the frequency of his nasal rinses to three time per day. (Doc. 48, p. 11). Mays claims these actions were premature, improper, and ordered in retaliation for grievances he had filed against Dr. Shah. (Doc. 48, p. 10-11; Doc. 9, p. 6).

Mays claims he spoke individually with both Philip Martin, the healthcare unit administrator, and Ryan Erickson, the clinical services supervisor, regarding his inadequate medical care. (Doc. 48, p. 5-8). He also wrote grievances regarding the treatment he was receiving, which were seen by Erickson and Martin, and several request slips that were forwarded to Martin . (*Id.* at p. 6-8). Although they were informed about his ineffective treatment, he alleges they failed to intervene.

Mays is proceeding on the following claims:

**Count 1:** Eighth Amendment deliberate indifference claim against Shah and Ritz for denying and delaying treatment of his nasal condition at Robinson during 2017.

**Count 2:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for implementing policies and procedures that resulted in Mays being denied necessary medical care.

**Count 3:** Eighth Amendment deliberate indifference claim against Martin and Erickson for failing to intervene to ensure that Mays would be given adequate medical treatment at Robinson.

**Count 4:** First Amendment retaliation claim against Shah, for prematurely terminating Mays's post-surgery medication and nasal rinses in January 2018 because Mays filed grievances against Shah.

## II.  *Applicable Law*

### a.  *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute

as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, a district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Donahoe*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

**b.**     *Eighth Amendment Deliberate Indifference*

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first consideration is

whether the prisoner has an "objectively serious medical condition." *Id. Accord Greeno* v. *Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan,* 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of serious harm") (internal quotation marks omitted) (emphasis added).

The second consideration requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno,* 414 F.3d at 653. Deliberate indifference requires actual knowledge; it is not enough to show that prison officials should have been aware of the risk of harm. *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). Knowledge of the risk of harm is usually proven by showing that the inmate complained to prison officials about the conditions in question. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). A plaintiff need not show that an inmate's complaints and requests for assistance were "literally ignored," but only that the officials' responses "were so plainly inappropriate as to permit the inference that the defendant intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). An inmate need not present direct evidence of the official's state of mind, however, and

circumstantial evidence can be used to infer an official's knowledge and intent. *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 196 (7th Cir. 2011) (citing *Farmer*, 511 U.S. at 842). Where prison officials are not medical professionals, they may rely upon the judgment of medical professionals as long as they do not actually ignore an inmate's mistreatment. *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008); *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017).

### III. Deliberate Indifference Claim Against Philip Martin and Ryan Erickson

The defendants do not dispute that Mays's nasal polyps qualify as a sufficiently serious medical condition for the purposes of his claim. Instead, they argue that Mays was not facing a substantial risk of serious harm, and he has not shown that they had a subjectively culpable state of mind. (Doc. 97, p. 6-7). The facts show that he received regular treatment for his nasal polyps, and Mays concedes that the medical records "lay out" the treatment he received. (*Id.* at p. 6; Doc. 97-1, p. 17). Defendants argue Mays was provided conservative treatment prior to an invasive surgery, and there is no evidence that the initial course of treatment provided caused him any harm or that he was at risk of harm. (Doc. 97, p. 7).

Furthermore, Defendants state that Mays has not demonstrated that they were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, drew that inference, and then disregarded it. (*Id.*). Defendants argue they are not personally responsible for the medical treatment and reasonably relied on the judgment of medical professionals. (*Id.* at pp. 8, 9). Not only was Mays receiving regular medical care for his nasal polyps, but the treating doctor sent him to collegial review and

at least two doctors reviewed the medical issues and established a treatment plan. (*Id.* at p. 9). In fact, Mays eventually received the surgery he wanted. (*Id.* at p. 10).

The Court finds that Martin and Erickson are entitled to summary judgment. Even viewing the evidence in light most favorable to Mays, he has not demonstrated an issue of material fact regarding deliberate indifference by Martin and Erickson. Mays claims that Martin and Erickson had knowledge of his serious condition and ineffective care from the grievances he filed and verbal conversations with both defendants, as well as requests slips sent to Martin. (Doc. 97-1, p. 10). According to the documents submitted by Mays, he submitted grievances regarding treatment for his nasal polyps and related symptoms on February 20, 2017 (two grievances), June 5, 2017, July 1, 2017, and July 18, 2017. (Doc. 2-1, pp. 22, 25, 28, 31, 33; Doc. 2-2, p. 30; Doc. 97-1, p. 28). It is also not disputed that Mays personally spoke with Martin and Erickson and thus there is no issue of fact regarding whether Martin and Erickson knew that Mays was continuing to experience symptoms from his nasal polyps.

Mays further asserts that Erickson and Martin did not do anything to change the type of treatment he was receiving, and specifically claims that Erickson did not investigate the issue. (Doc. 97-1, pp. 7, 10). This assertion, however, is not supported by the record. First, Mays testified that he does not know what actions Martin or Erickson took in resolving his grievances. (Doc. 97-1, pp. 9, 13). Second, the grievances were responded to by counselors after conferring with Martin ad Dr. Shah. (*See* counselors' responses and grievance officers' reports, Doc. 2-1, p. 22, 23, 25, 30, 33*).* In the medical record, the healthcare unit recorded that on March 10, 2017, it received correspondence from Mays and that he had been seen for all issues by a doctor. (Doc. 97-4, p. 7). On June

15, 2017, the healthcare unit noted that it had received the June grievance and that Mays had been seen by Dr. Shah on May 2, 2017, and June 5, 2017, and that Dr. Shah had ordered collegial review for ENT, but was denied. (Doc. 97-4, p. 18). The note continues stating that Dr. Shah was going to follow the alternative treatment plan and had ordered medications and an x-ray. (*Id*.). Martin states in his declaration that after Mays was denied for collegial review, he reviewed the alternative treatment plan and determined that the conservative plan appeared proper. (Doc. 97-2, p. 2). Although Mays states that Dr. Shah did not examine his nose at every appointment (Doc. 97-1, p. 33), he does not deny that (1) during the time he was filing grievances he was being seen by a doctor for his nasal problems and had at least ten appointments[2] with Dr. Shah prior to being seen by an ENT (*Id.* at p. 7); (2) Dr. Shah referred him to the ENT through collegial review on three separate occasions and appealed the denial (*Id.* at pp. 8, 11, 24, 30, 33, 36); (3) prior to being referred to an ENT, he had two x-rays (*Id.* at p. 23, 30); and (4) he was seen by an ENT on September 8, 2017 (*Id.* at p. 35).

Prison officials who are non-medical professionals are entitled to rely upon the judgment of medical professionals to avoid liability under the Eighth Amendment. *See Lee*, 533 F.3d at 511. Martin and Erickson have stated that they do not prescribe and direct treatment for patients; those decisions are left to the medical doctors. (Doc. 97-2, 1; Doc. 97-3, p. 1). Other than his assertion—that despite complaining to Martin and Erickson he was continued on a conservative treatment plan for several months prior to being referred to a specialist—Mays has offered no evidence to support his argument that

---

[2] In his deposition, Mays confirms appointments with Dr. Shah regarding his nasals polyps on February 13, 2017, March 8, 2017, March 29, 2017, March 31, 2017, May 2, 2017, June 5, 2017, July 3, 2017, July 17, 2017, August 10, 2017, and August 29, 2017. (Doc. 97-1, pp. 19, 24, 26, 27, 28, 30, 31, 33, 34).

the defendants acted with intentional or reckless conduct regarding his medical condition. To the contrary, the record demonstrates that Mays continued to receive care for his nasal polyps and that his grievances were investigated and answered. Accordingly, the motion for summary judgment is granted.

**DISPOSITION**

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Philip Martin and Ryan Erickson (Doc. 96). The claims against them are **DISMISSED with prejudice**. The Clerk of Court shall terminate Martin and Erickson as defendants and enter judgment in their favor at the conclusion of the entire action. The Clerk is further directed to correct the docket in accordance with footnote 1.

The Motion for Extension of Time to File Response (Doc. 138) and the Motion to Transfer Venue (Doc. 127) are **DENIED**. The Motion to Appoint Counsel filed by Mays (Doc. 128) and the Motion for Summary Judgment filed by Ritz, Shah, and Wexford Health Sources (Doc. 115) remain pending and shall be addressed in a separate order.

**IT IS SO ORDERED.**

**DATED:   April 6, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**