## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TIBERIUS MAYS,**<br>**#N92625,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 18-cv-00597-NJR** |
| **VIPIN SHAH,**<br>**STEPHEN RITZ,**<br>**PHILIP MARTIN,**<br>**RYAN ERICKSON, and**<br>**WEXFORD HEALTH SOURCES, INC.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion for summary judgment filed by Defendants Vipin Shah, M.D., Stephen Ritz, D.O., and Wexford Health Sources, Inc. (Doc. 115); Dr. Shah, Dr. Ritz, and Wexford also filed a separate memorandum in support of summary judgment, which contains a statement of undisputed material facts (Doc. 116). To date, Plaintiff Tiberius Mays ("Mays") has failed to file a response to Defendants' motion for summary judgment. Also pending before the Court is a motion filed by Mays seeking the appointment of counsel (Doc. 128). For the following reasons, the motion for appointment of counsel will be denied, and the motion for summary judgment will be granted.

## I.      Motion for Appointment of Counsel

In Mays's motion for counsel, he contends that he needs counsel because he is

litigating against two physicians and facing an increasingly complex set of demands in this case. (*See* Doc. 128). He also notes that an attorney would be better than a *pro se* litigant to respond to Defendants' motions for summary judgment. (*Id*.). This is not the first time Mays has asked for a court appointed lawyer in this case and each time, his request has been denied (*e.g.*, Docs. 13, 14, 44, 47, 84, 105).

Determining whether to appoint counsel is a two-step analysis. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc). In short, the Court must make the following two inquiries:  (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so, *and* (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself. *Id*.

Because the Court has already concluded that Mays has made a reasonable attempt to obtain counsel, the Court focuses on the second prong of the test, *i.e.*, whether Mays appears competent to litigate this case himself given the complexity of the case. This inquiry requires the Court to ask "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). It requires the Court to consider "all tasks that normally attend litigation, including evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial," as well as the plaintiff's "literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations, and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* In other words, this inquiry is an individualized one based upon the record

2

as a whole, the nature of the claims, and the plaintiff's ability to pursue his claims through all phases of the case. *Navejar v. Iyioloa,* 718 F.3d 692, 696 (7th Cir. 2013).

Here, the record demonstrates that Mays is certainly capable of litigating this case on his own. Mays filed the instant motion for appointment of counsel the same day he filed a motion to transfer venue. (*See* Docs. 127, 128). The Court notes this because Mays's motion to transfer venue is just one example of the cogency with which he is capable of writing and presenting his legal arguments to the Court. His motion to transfer venue contains statutory citations as well as citations to case law to support his argument. A cursory review of the docket reveals other filings from Mays which contain citations to authority or supporting exhibits (e.g., Docs. 127, 128, 129, 134). His writing is clear, concise, and well-organized. And while it is true that Mays has failed to respond to the instant summary judgment motion, that failure does not appear to be as a result of his lack of legal abilities or writing proficiency because he has submitted numerous other filings in the interim. (*See* Docs. 100, 102, 107, 113, 127, 128). In short, his failure to respond to the summary judgment motion appears more likely to be based on a conscious choice rather than an inability to do so. Thus, the motion for appointment of counsel (Doc. 128) will be denied.

## II.     Motion for Summary Judgment

### Factual Background

Mays commenced this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. On March 21, 2018, the Court issued an Order (Doc. 1) severing a number of Mays's original claims into separate actions, and the claims regarding

medical treatment of his nasal polyps during his time at Robinson were severed into this action. Mays alleges that he suffers from chronic nasal polyps, which impair his ability to breathe, interfere with his sense of smell, cause pain and dizziness when he blows his nose, as well as nose bleeds. (Doc. 9, p. 4; Doc. 48, p. 11). He also gets a sore throat and sometimes chokes from breathing through his mouth. (*Id.*). In April 2014, while he was at Lawrence Correctional Center, Mays underwent nasal surgery at an outside hospital. (Doc. 9, p. 4). On February 8, 2017, he was transferred to Robinson, and he claims his condition continued to deteriorate due to inadequate medical care. (Doc. 48, p. 5). He had an appointment with an ear, nose, and throat doctor on September 8, 2017, and endoscopic nasal surgery for the polyps at Carle Hospital on January 5, 2018. (*Id.* at p. 7; Doc. 97-1, p. 11). Following the surgery, Dr. Shah terminated Mays's Tylenol-3 and reduced the frequency of his nasal rinses to three time per day. (Doc. 48, p. 11). Mays claims these actions were premature, improper, and ordered in retaliation for grievances he had filed against Dr. Shah. (Doc. 48, p. 10-11; Doc. 9, p. 6).

Mays claims he spoke individually with both Philip Martin, the healthcare unit administrator, and Ryan Erickson, the clinical services supervisor, regarding his inadequate medical care. (Doc. 48, p. 5-8). He also wrote grievances regarding the treatment he was receiving, which were seen by Erickson and Martin, and several request slips that were forwarded to Martin. (*Id.* at p. 6-8). Although they were informed about his ineffective treatment, he claimed they failed to intervene.

Mays is proceeding on the following claims against Dr. Shah, Dr. Ritz, and Wexford:

4

**Count 1:**    Eighth Amendment deliberate indifference claim against Shah and Ritz for denying and delaying treatment of his nasal condition at Robinson during 2017.

**Count 2:**    Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for implementing policies and procedures that resulted in Mays being denied necessary medical care.

**Count 4:**    First Amendment retaliation claim against Shah, for prematurely terminating Mays's post-surgery medication and nasal rinses in January 2018 because Mays filed grievances against Shah. [1]

## Procedural Background

Dr. Shah, Dr. Ritz, and Wexford filed their joint motion for summary judgment on September 30, 2019. (Doc. 115). That same day, they also filed their "Notice of Motion" outlining to Mays the relevant portions of Federal Rule of Civil Procedure 56 and the consequences of failing to respond to their motion. (Doc. 117). Mays had 30 days to respond to the motion. *See* SDIL-LR 7.1(c)(1).

On October 11, 2019, Mays filed his first motion requesting an extension of time to file a response to Defendants' motion (Doc. 119), which the Court granted.[2] (Doc. 120). The Court subsequently granted his second, third, and fourth requests for additional time to file a response. (Docs. 122, 130, 136). He was repeatedly informed by the Court that further extensions would unlikely be granted absent extraordinary circumstances.

---

[1] The Court has already granted summary judgment in favor of Defendants Martin and Erikson (IDOC Defendants) on Mays's deliberate indifference claim (Count 3) against these two Defendants. (*See* Doc. 142).

[2] At the time of each of these requests, the instant motion for summary judgment was pending as well as the IDOC Defendants' motion for summary judgment (*see* Doc. 98), which the Court has since granted. (Doc. 142).

Finally, in granting his fourth motion for an extension of time, the Court advised him that no further extensions would be granted and that the Court would rule on the motions with or without a response from him. (Doc. 136). On March 2, 2020, Mays filed another motion seeking an extension. This was Mays's fifth request for more time to respond.

The Court declined to allow Mays more time and proceeded to consider the first motion for summary judgment that had been filed in this case by Martin and Erickson (the IDOC employees). In so doing, the Court noted Mays would not receive any more extensions as he had been given more than a sufficient amount of time to respond and received ample warning that no further extensions would be granted (*See* Doc. 142). The Court also noted that while Mays claimed he was unable to respond to the pending summary judgment motions, he had been able to file a motion to compel (Doc. 100), a motion to strike Defendants' motion for summary judgment (Doc. 101), a motion to answer numerous pending motions (Doc. 102), an objection to rulings by the magistrate judge (Doc. 107), a reply to Defendants' response to the motion to compel (Doc. 113), a motion to transfer venue (Doc. 127), and a motion for the appointment of counsel (Doc. 128). (*See* Doc. 142). Accordingly, the Court denied the request for extension of time, considered the merits of the IDOC Defendants' motion for summary judgment and granted it. (*Id.*).

Since this Court's Order granting summary judgment in favor of the IDOC Defendants (in April 2020), Mays has filed a notice of appeal of this Court's Order (Doc. 143), a motion for leave to appeal in forma pauperis (Doc. 144), and apparently a voluntary dismissal of his appeal (Docs. 150, 150-1). But to date, Mays has still failed to

respond to the instant motion for summary judgment.

## Legal Standards

### a.  *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In this instance, however, Mays has failed to respond to the motion for summary judgment, which contains 87 undisputed material facts. (*See* Doc. 116, pp. 2-21). These 87 undisputed material facts contain detailed citations to the record and span nearly twenty pages. (*Id.*). This is important because Mays's failure to respond and address these undisputed facts brings Federal Rule of Civil Procedure 56(e) into play. Specifically, this portion of the Rule provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> **(1)** give an opportunity to properly support or address the fact;
>
> **(2)** consider the fact undisputed for purposes of the motion;

**(3)** grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

**(4)** issue any other appropriate order.

FED. R. CIV. P. 56(e).

### b. *Eighth Amendment Deliberate Indifference (medical care)*

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first consideration is whether the prisoner has an "objectively serious medical condition." *Id. Accord Greeno* v. *Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan,*

8

511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of serious harm") (internal quotation marks omitted) (emphasis added).

The second consideration requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno,* 414 F.3d at 653. Deliberate indifference requires actual knowledge; it is not enough to show that prison officials should have been aware of the risk of harm. *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). Knowledge of the risk of harm is usually proven by showing that the inmate complained to prison officials about the conditions in question. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). A plaintiff need not show that an inmate's complaints and requests for assistance were "literally ignored," but only that the officials' responses "were so plainly inappropriate as to permit the inference that the defendant intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). An inmate need not present direct evidence of the official's state of mind, however, and circumstantial evidence can be used to infer an official's knowledge and intent. *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 196 (7th Cir. 2011) (citing *Farmer*, 511 U.S. at 842). Where prison officials are not medical professionals, they may rely upon the judgment of medical professionals as long as they do not actually ignore an inmate's mistreatment. *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008); *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017).

### c. *Eighth Amendment Deliberate Indifference (policies and procedures)*

While Wexford is a private corporation, under Seventh Circuit law, a private company that has contracted to provide essential government services, such as health care for prisoners, can be held liable if the constitutional violation was caused by an unconstitutional policy, practice, or custom of the corporation itself. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978). This is often what is referred to as a *Monell* theory of liability. *Id*. To prevail on a *Monell* claim, the plaintiff must show that Wexford is responsible for a harmful custom or practice and that policymakers were "aware of the risk created by the custom or practice" and were "deliberately indifferent as to known or obvious consequences" of the practice. *Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2009). This requires a showing of actual awareness of facts from which such a risk could be inferred. *Farmer,* 511 U.S. at 837. Whether the alleged act was caused by an express policy or a customary practice, a plaintiff must show that the policy or custom was the "moving force" behind the injury. *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Because the policy must be the moving force behind the injury, there must be a showing of some underlying action or inaction by an agent of the entity in question that caused the constitutional harm. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that where individual police officers had not inflicted any constitutional harm, claim based on police regulations could not succeed).

### d. *First Amendment Retaliation*

"An act taken in retaliation for the exercise of a constitutionally protected right

violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). An inmate has a First Amendment right to file grievances and lawsuits. *Id.; Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). In order to prevail on a claim of retaliation, a plaintiff must show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). Thus, the plaintiff must set forth a chronology of events and show that his litigation activities were a motivating factor for an adverse action. *DeWalt*, 224 F.3d at 618. In this context, an adverse action is one that would chill or deter a person of ordinary firmness from exercising a First Amendment right. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Once the plaintiff meets his burden, the burden shifts to Defendants to show that the harm would have occurred anyway. *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011).

## Discussion

From the outset, the Court finds that each and every one of the 87 material facts provided by Dr. Shah, Dr. Ritz, and Wexford in their memorandum in support of summary judgment are undisputed. Mays was given many opportunities to respond to the pending motion for summary judgment and failed to do so. Mays repeatedly claimed that he needed more time to respond to the summary judgment motion, all the while, he had no trouble filing a litany of other motions with the Court (*e.g.*, Docs. 100, 101, 102, 107, 113, 127). Mays was also appropriately informed by Dr. Shah, Dr. Ritz, and Wexford of the implications of failing to respond to a motion for summary judgment and statement

11

of undisputed facts. (*See* Doc. 117). Moreover, Mays was notified that pursuant to this Court's Local Rules, a failure to file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion. (*Id*.) (*citing* SDIL-LR 7.1(c)("Failure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion."). Under Federal Rule of Civil Procedure 56(e), the Court has several options to consider when a party has failed to properly address another party's assertion of fact. Here, Mays was given many chances to respond, he failed to do so, and all the while submitted a host of other filings to the Court. The Court believes it is appropriate to use its discretion and deem each of the 87 material facts undisputed. *See e.g., Xavier v. Myers*, 2020 WL 5095242, at *2 (S.D. Ill. Aug. 28, 2020)("The Court deems all material facts undisputed because Plaintiff failed to file a response to the pending motion for summary judgment by the original deadline (April 20, 2020) or extended (July 6, 2020) deadline.").

Turning first to Mays's deliberate indifference claims against Dr. Shah and Dr. Ritz, Mays contends that each doctor either delayed or outright denied treatment of his nasal condition. (Doc. 48). In seeking summary judgment, Dr. Shah's argument focuses primarily on the subjective component of the deliberate indifference standard, arguing that Mays cannot show that anything about his treatment was inappropriate. Dr. Shah contends he treated Mays as was "medically necessary" based on his symptoms and subjective complaints. Based on the undisputed material facts provided by Dr. Shah, the Court agrees. Dr. Ritz likewise focuses on the subjective component of Mays's deliberate indifference claim against him. Again here, based on the undisputed material facts, the

Court agrees. Dr. Shah and Dr. Ritz are entitled to summary judgment with respect to Count 1.

With respect to the claim against Wexford, there is no evidence currently before this Court to support Mays's theory that Wexford implemented policies and procedures that resulted in the denial of his medical care or that were designed to save money by denying outside referrals. Mays has not identified an express policy to support his theory of liability. Nor is there any evidence in the record, based on the undisputed material facts, to show an implied policy or widespread/customary practice to support Mays's theory of liability. Without either, the *Monell* claim must fail (Count 2). *Rice*, 675 F.3d at 675 (in order to survive on a *Monell* claim, "it is not enough for the plaintiff to show that an employee of the municipality or corporation violated his constitutional rights; he must show that his injury was the result of the municipality's or corporation's official policy or custom").

Finally, turning to the First Amendment claim, Mays contends that Dr. Shah retaliated against him by prematurely terminating post-surgery medication and nasal rinses after Mays filed grievances against Dr. Shah. (*See* Doc. 48). "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt*, 224 F.3d at 618. Based on the undisputed material facts, Mays cannot demonstrate that Dr. Shah had any knowledge of the grievance he filed against him. While it is true that Dr. Shah ultimately discontinued his Tylenol-3 prescription and reduced his nasal rinses, the undisputed facts make clear he did this as a result of Mays's self-reports and his own medical judgment and had no knowledge of any grievance Mays

13

filed. (Doc. 116, p. 16). Accordingly, Dr. Shah is entitled to summary judgment on the retaliation claim against him (Count 4).

## Conclusion

For the reasons set forth above, the motion for appointment of counsel filed by Plaintiff Tiberius Mays (Doc. 128) is **DENIED.** The motion for summary judgment filed by Defendants Vipin Shah, M.D., Stephen Ritz, D.O., and Wexford Health Sources, Inc. (Doc. 115) is **GRANTED**. The claims against them are **DISMISSED with prejudice**.

If Mays wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If he does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Mays cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* (IFP motion) along with an affidavit that shows in detail his inability to pay. *See* FED. R. APP. P. 24(a)(1)(C); Form 4 of the Appendix of Forms. The IFP motion must set forth the issues Mays plans to present on appeal. *Id.* A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to enter judgment in favor of all Defendants and against Mays and close this case.

**IT IS SO ORDERED**

**Dated:  September 21, 2020**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**